HARJO v. HARJO.

No. 35033. July 15, 1952.

Rehearing Denied Aug. 5, 1952.

247 P. 2d 522.

Dwight Tolle, Okemah, for plaintiff in error.

Richard A. Hays and H. D. Pitchford, Okmulgee, for defendant in error.

DAVISON, J. This is a suit wherein Joe Harjo, as plaintiff, seeks to quiet his title to certain lands and premises in Okmulgee county, Oklahoma, as against the claims of his daughter, Donna Joe Harjo, the defendant, arising out of contract. The parties will be referred to as they appeared in the trial court.

All rights of the parties hereto are determined by, and the sole question presented by this appeal is, the interpretation of the hereinafter quoted contract. On October 5, 1936, Joe Harjo and his wife Allie Harjo, the parents of Donna Joe Harjo, the defendant herein, entered into the following contract, to wit:

"Agreement"

"This Agreement, made and entered into on this 5th day of October, 1936, by and between Joe Harjo, of Okmulgee, Oklahoma, party of the first part, and Allie Harjo, of Okmulgee, Oklahoma, party of the second part, Witnesseth:

"That Whereas, said parties to this agreement are husband and wife, but are now living separate and apart from each other, and it is their intention to so continue to live separate and apart; and,

"Whereas, party of the second part has this day instituted suit for divorce against party of the first part in the District Court of Okmulgee County, Oklahoma, under cause numbered 20543 in said Court, and has asked that she be awarded the custody, case, control and education of Donna Joe Harjo, minor child of the parties hereto, and for the ratification and approval of this property settlement and agreement concerning the support and maintenance of said child; and,

"Whereas, said parties hereto have this day reached a satisfactory agreement and settlement between themselves out of Court concerning the custody, support and maintenance of said Donna Joe Harjo, and the support, maintenance and alimony of party of the second part hereto, as well as for a division of and settlement of property rights, claims or demands of any nature, either past, present or future, as hereinafter set out;

"Now Therefore, in consideration of the mutual promises and agreements hereinafter contained, said parties hereto each agree with the other, as follows, to wit:

"1. That party of the second part is to have the care, custody and control of Donna Joe Harjo, minor child of the parties hereto, subject to the approval of the District Court of Okmulgee County, Oklahoma, subject to any future orders of said Court concerning the custody of said child, and subject to the right and privilege in party of the first part to visit said child upon any and all reasonable times and occasions; and party of the second part, subject to the terms, agreements and conditions hereinafter stated, accepts the custody of said child and agrees to properly care for, support, rear, train and educate said child to the best of her ability, it being further understood and agreed that party of the second part shall have the right and privilege to select the domicile or place of residence for said child at whatsoever place within the State of Oklahoma she may desire, but shall and will inform party of the first part of any change in said place of residence.

" * * * Party of the first part further agrees to and with party of the second part that he will turn over to her for the support of and maintenance of said party of the second part and said Donna Joe Harjo, until such time as party of the second part may remarry, all of the proceeds arising from his interest in oil and gas royalties from wells now producing, and one half of all of the proceeds arising from his interest in oil and gas royalties from any wells which may be hereinafter drilled upon any and all land now owned by party of the first part, or in which he may own any interest, either legal or equitable, said land being particularly described as follows, to-wit:"

(Then follows a description of the lands involved in this appeal and the agreement continues):

"3. * * * It is further agreed that in the event of the remarriage of the party of the second part to any person

other than party of the first part during the lifetime of said Donna Joe Harjo, then, and in that event, all of the aforesaid oil and gas royalties, oil runs and gas runs, or proceeds from same arising from said lands shall be paid to said Donna Joe Harjo, or to her duly appointed guardian. That in the event party of the first part and part of the second part remarry each other, or in the event party of the second part marries someone other than party of the first part during the lifetime of said Donna Joe Harjo and said Donna Joe Harjo thereafter dies, or in the event of the remarriage of party of the second part after the death of said Donna Joe Harjo, or in the event of the death of party of the second part at any time, then, and in either event mentioned, and immediately upon the happening thereof, said party of the first part shall be entitled to, and shall have and receive all such oil and gas royalties, oil runs and gas runs, or other proceeds arising from the same not already paid over to said party of the second part or to said Donna Joe Harjo under the provisions of this agreement; and party of the second part agrees that in the event of any such remarriage she will promptly make, execute and deliver any necessary and proper transfer orders, division orders, or other instruments necessary to enable such person as is entitled thereto under the provisions of this agreement to collect and receive same, and that in the event she should fail, refuse or neglect to do so, then, and in that event, this instrument shall be taken, treated and construed as a compliance and assignment of said interests, runs and royalties above mentioned.

"4. It is further understood and agreed by and between the parties hereto that party of the second part disclaims any right, title or interest in and to the 1940 model A Ford automobile belonging to party of the first part. The party of the first part shall have the full and unrestricted use and benefit of, and the rents and profits, except the oil and gas runs and royalties above mentioned, arising from all of the land above acquired, in any manner, by party of the first part, but, that in the event of the sale by party of the first part of any of said real estate herein described during the lifetime of said Donna Joe Harjo party of the first part shall and will pay over to said Donna Joe Harjo, or to her duly appointed guardian, for her use, support, maintenance and education, the full one third of any and all sums realized from the sale of any or all of said property and that party of the second part, will, upon request, join, with party of the first part, or will execute, acknowledge and deliver any and all necessary and proper instruments in writing to effectuate the sale and conveyance of any such property; it being understood, however, that nothing in this paragraph contained shall be construed as conferring the right upon party of the first part to make any sale or conveyance of any oil or gas royalty in, to or under any of the land above described, but that said oil and gas royalty interests in said land shall be held for the use, support and maintenance of party of the second part and Donna Joe Harjo, as aforesaid.

"5. Party of the second part in consideration of the foregoing covenants and agreements hereby agrees that she will not at any time undertake to hold party of the first part liable for, or undertake to collect from him any sum or sums for alimony, court costs, attorneys fees, support or maintenance for herself or said Donna Jo Harjo, and that this agreement may be pleaded in any suit as a defense to any action for alimony, court costs, attorneys fees, support and maintenance.

"Witness our signatures in duplicate the day and year above written.
"(Signed) Joe Harjo.
"Party of the first part
"(Signed) Allie Harjo
"Party of the second part."

Under the terms of the above agreement, the oil companies paid the royalties, specified therein, to Allie Harjo until she married again and then to the defendant, Donna Joe Harjo, until July 28, 1949, when she reached her majority. After that, they were not paid out but were held in a suspense account until determination of rights of the parties with reference thereto.

For the purpose of determining that question, plaintiff filed this suit on February 24, 1950. A trial of the issues to the court resulted in a judgment for plaintiff on August 10, 1950, from which the defendant has perfected this appeal.

There is presented for determination by this court only the following question: Did the rights of the defendant, under the provisions of the above-quoted agreement, terminate when she reached the age of eighteen years on July 28, 1949? Our conclusion is that the trial court was correct in holding that they did.

In this jurisdiction, both by statute and by judicial decision, the rules of construction applicable to the interpretation of contracts are quite complete and well established. Section 152 of Title 15, O.S. 1941 provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

By section 155, it is provided:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

Section 157 of the same title provides:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Section 163 thereof provides:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

On many occasions, the import of these statutes has been explained by this court. Extensive discussion or citation of those cases is not here necessary. The following comparatively recent cases cover the points involved.

In the case of Texas Co. v. Adelman, 186 Okla. 663, 99 P. 2d 874, 127 A.L.R. 945, it was said:

"Of all the rules relating to the construction of contracts the one of most importance is that the intention of the parties at the time of the contract must control. If that intention is clearly and unequivocally expressed in the written contract, the literal words thereof must generally prevail. If, however, the contract or any part thereof is reasonably susceptible to different meanings, it then becomes necessary to resort to other established rules. * * *"

In the case of Popplewell v. Jones, 202 Okla. 185, 211 P. 2d 283, it was held,

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties thereto as expressed therein, and give effect to the same, if it can be done consistently with legal principles. In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit, and does not involve an absurdity, governs in the interpretation."

And in the case of Pollock Stores Co. v. Draper, 202 Okla. 546, 215 P. 2d 843, it was stated:

"And where the writing does not clearly set forth the agreement, we have repeatedly held that the admission of parol evidence is proper. Packard Oklahoma Motor Co. v. Funk, 117 Okla. 96, 245 P. 571; Wood v. Polk, 193 Okla. 156, 141 P. 2d 796; Harjo Gravel Co. v. Luke-Dick Co., 194 Okla. 537, 153 P. 2d 112. The trial court properly admitted evidence as to the negotiations of the parties and the circumstances surrounding the transaction. * * *"

There are several provisions in the contract under consideration which have a bearing upon a determination of the intention of the parties with reference to if or when the payment of royalties to the defendant should terminate. First, it will be noted that the contract was brought about by, and was in settlement of certain claims asserted in, the

divorce action between the parents of defendant: In the divorce case, the court could go no further in providing for support, maintenance and education of the defendant here than to make provision therefor during her minority. Further, the mother of the defendant here asked that court "for the ratification and approval of this property settlement and agreement concerning the support and maintenance of said child." The contract also provided that the plaintiff here agreed to "turn over to her (Allie Harjo) for the support and maintenance of said party of the second part and said Donna Joe Harjo, until such time as party of the second part may remarry, all the proceeds," etc. It was further agreed that if Allie Harjo remarried "during the lifetime of said Donna Joe Harjo, then, and in that event, all of the aforesaid oil and gas royalties * * * shall be paid to said Donna Joe Harjo, or to her duly appointed guardian." Also, if the parties remarried each other or if Allie Harjo remarried and Donna Joe Harjo died either before or after such marriage or "in the event of the death of party of the second part (Allie Harjo) at any time," the contract was terminated and further royalty payments were to be made to Joe Harjo.

This last-quoted provision, that the death of Allie Harjo would terminate the provisions of the contract in all events, could have had no application or meaning if, as defendant contends, the royalty payments were to be made to Donna Joe Harjo from the date of the contract without termination. If, however, plaintiff's contention be adopted, that contract provision did have meaning and effect. In other words, if Allie Harjo, the mother, died, Joe Harjo, as the father, would have become immediately entitled to the care, custody and control of Donna Joe Harjo during her minority and, during such minority would have been responsible for her support, maintenance and education without the necessity of a contract to that effect.

The contract is, without question, an ambiguous one, the meaning of which is in dispute. When such condition exists, "evidence of extrinsic facts and circumstances throwing light on the intention of the parties is admissible." Brogden v. Perryman, 176 Okla. 505, 56 P. 2d 398, and cases therein cited. The trial court correctly permitted the introduction of parol evidence on this point, and the matter was a mixed question of law and fact to be determined by the trier thereof, whether court or jury. The testimony on the point is in sharp conflict, plaintiff testifying that the agreement of the parties was that payment of royalties to defendant should terminate with her attaining majority, Allie Harjo testifying that the agreement was that such payment should continue for the lifetime of the defendant. However, plaintiff's testimony was strengthened by the wording of the contract as above pointed out. The judgment of the trial court is clearly supported by the weight of competent evidence and should not be disturbed.

The judgment is affirmed.

HALLEY, V.C.J., and WELCH, CORN, and BINGAMAN, JJ., concur.