**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL AMERICAN
INSURANCE COMPANY, an
Oklahoma Corporation,

      Plaintiff - Appellant,

    v.

AMERICAN RE-INSURANCE
COMPANY,

      Defendant - Appellee.

No. 03-6088

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D. Ct. No. 02-CV-232-H)**

---

Joseph K. Goerke, Driskill & Jones, Oklahoma City, Oklahoma (Alison A. Cave, Driskill & Jones, Oklahoma City, Oklahoma, and R. Patrick Gilmore, Chandler, Oklahoma, with him on the briefs), appearing for Appellant.

Robert D. Allen, Baker & McKenzie, Dallas, Texas (William W. Speed, Law Offices of William W. Speed, Ada, Oklahoma, with him on the brief), appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant National American Insurance Company ("NAICO") brought breach of contract claims against Defendant-Appellee American Re-Insurance Company ("Am-Re"). Upon motion for summary judgment by Am-Re, the district court held the relevant reinsurance policy language ambiguous, admitted Am-Re's uncontroverted parol evidence supporting its interpretation of the policy, and granted Am-Re summary judgment. This appeal followed. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. Background

This case arises out of a dispute concerning the type of reinsurance purchased by a primary insurer. As a foundation for this analysis, we note that insurance companies often cover their potential liabilities in layers. For example, if a policy offers the insured $3 million in coverage, the primary insurer might provide the first $100,000 in coverage, a secondary reinsurer might provide coverage for liabilities from $100,000 to $1,000,000, and a tertiary entity—often Lloyd's of London or a similar institution—would provide coverage for any excess liability. In addition to this layering of liability, insurance companies may purchase differing types of insurance or reinsurance at each level.

This case concerns three types of insurance. "Occurrence-based" insurance requires the insurer to cover any liability that results from an event that occurred during the policy period—even if the injury is discovered and the claim is made

-2-

after the expiration of the coverage period. This type of insurance contrasts with the second relevant type of insurance—"claims-made." Under this scheme, the date of the discovery of the injury and the claim-filing date must fall within the policy period. Generally, a claims-made policy includes a retroactive date that precludes coverage for liability-producing events occurring prior to that date. *See generally In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 409-10 (Minn. 2003) (discussing differences between occurrence-based and claims-made policies). The third type of coverage at issue here is "tail coverage," which one commentator describes as "'occurrence' coverage for occurrences within the policy period producing claims within the specified extended reporting period." Bob Works, *Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case*, 5 CONN. INS. L.J. 505, 528 n.36 (1999). We turn now to the facts before us.

The Association of County Commissioners of Oklahoma Self-Insured Group ("ACCO-SIG") provides Oklahoma counties with liability insurance for a wide range of activities—from auto coverage to pollution liability. ACCO-SIG offers occurrence-based coverage to its member counties, while limiting its coverage to the first $50,000 of liability for any claim. Thus, ACCO-SIG purchases reinsurance to cover any liability above $50,000 per claim.

From July, 1, 1995, until July 1, 1997, ACCO-SIG purchased claims-made

reinsurance from NAICO. NAICO's reinsurance policy had an "other-insurance clause," which required ACCO-SIG to seek coverage under any other insurance policy that it held prior to seeking coverage from NAICO. [1] Immediately prior to July 1, 1997, several ACCO-SIG member counties submitted 33 claims to ACCO-SIG totaling approximately $1.5 million in liability. NAICO and Am-Re dispute liability for these claims.

On July 1, 1997, ACCO-SIG switched its reinsurance coverage for the next two years to Am-Re. Unlike the NAICO one, the Am-Re policy [2] does not contain an other-insurance clause. Am-Re also provided ACCO-SIG with retroactive reinsurance for the period July 1, 1992, to July 1, 1997. Whether this retroactive policy is properly construed as occurrence-based or tail coverage forms the crux of this appeal.

ACCO-SIG sought reimbursement from NAICO for the $1.5 million in claims filed by the member counties immediately prior to July 1, 1997. NAICO refused to pay, and, in 1999, ACCO-SIG sued NAICO in Oklahoma state court. NAICO defended, in part, on the theory that Am-Re's retroactive reinsurance

---

[1]In relevant part this clause states "If the Insured has other insurance insuring against a Loss covered by this policy, the insurance provided by this policy shall apply in excess of the other insurance."

[2]There were two reinsurance contracts between ACCO-SIG and Am-Re, one providing specific excess of loss coverage and the other supplying aggregate excess of loss reinsurance. Both contracts contain the same relevant language. We refer to them as one reinsurance policy for convenience.

triggered the other-insurance clause of NAICO's policy. Thus, in NAICO's view, ACCO-SIG should have looked to Am-Re for coverage. ACCO-SIG and NAICO eventually settled with NAICO paying ACCO-SIG $1.25 million in exchange for ending the litigation and the assignment of ACCO-SIG's rights against Am-Re.

NAICO then launched a diversity suit, pursuant to 28 U.S.C. § 1332, against Am-Re, asserting breach of contract, tortious breach of contract, unjust enrichment, and subrogation claims under Oklahoma law. NAICO seeks to recover the $1.25 million it paid to ACCO-SIG, arguing that the retroactive portion of the Am-Re reinsurance policy places liability for the pre-July 1, 1997, events on Am-Re. NAICO moved for partial summary judgment on these grounds. Am-Re responded by filing a summary judgment motion of its own.

The district court granted Am-Re's motion in an alternative holding. First, the district court held that the Am-Re reinsurance contract was ambiguous. Then, it considered parol evidence of Am-Re and ACCO-SIG's intent to form a retroactive tail coverage policy, finding this evidence uncontroverted by NAICO. In the alternative, the district court held that the parol evidence also supported a finding of mutual mistake as to the Am-Re reinsurance policy. Accordingly, it granted summary judgment for Am-Re. NAICO filed a timely notice of appeal.

## II. Standard of Review

We review the district court's "grant of summary judgment de novo,

applying the same standards used by the district court." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

Although the movant must show the absence of a genuine issue of material fact, it "need not negate the nonmovant's claim." *See Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon its pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

### III. Discussion

On appeal, NAICO makes three arguments. First, NAICO contests the

-6-

district court's conclusion that the Am-Re policy is ambiguous. We address this argument below. Second, NAICO argues that, because the district court issued an opinion in the alternative, employing conditional language, it failed to make specific findings of contractual ambiguity. This argument is meritless; thus we reject it summarily. A district court is entitled to offer alternative grounds for its holding. Third, NAICO argues that the equitable doctrine of mutual mistake does not apply here. Because we affirm on ambiguity grounds, we need not address the mutual mistake issue.

### A.    Oklahoma Contract Law

The parties do not contest that Oklahoma law governs this case. On issues of contractual ambiguity and the use of parol evidence, the law is well settled.

> In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996) (footnotes omitted).

In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others. Okla. Stat. Ann. tit. 15, § 157. If a contract is ambiguous, the trial court may admit parol evidence to aid in interpretation. *Fowler v. Lincoln County*

*Conservation Dist.*, 15 P.3d 502, 507 (Okla. 2000). Generally, the issue to which parol evidence has been admitted becomes "a mixed question of law and fact to be determined by the trier thereof, whether court or jury." *Harjo v. Harjo*, 247 P.2d 522, 526 (Okla. 1952). Nonetheless, a trial court may consider parol evidence in making its summary judgment ruling if the movant properly submits the evidence along with his motion. *Prudential Ins. Co. of Am. v. Glass*, 959 P.2d 586, 595 (Okla. 1998).

**B.      The Parties' Interpretations Of The Am-Re Reinsurance Policy**

The provisions of the Am-Re reinsurance policy under dispute follow (with the pivotal language placed in bold by this Court):

ARTICLE I

BUSINESS COVERED
        (a)      [Am-Re] agrees to reimburse [ACCO-SIG], on an excess loss basis for the amounts of ultimate net loss which [ACCO-SIG] may pay for the coverages set forth below . . . .

COVERAGES

General Liability, Automobile Liability, Law Enforcement Liability and Public Official Liability, Pollution Liability and Criminal Defense Liability Reimbursement Coverage as provided in the [ACCO-SIG] Liability Protection Plan document for covered [ACCO-SIG] entities . . . **as respects losses occurring or claims made as applicable, commencing on and after 12:01 A.M., July 1, 1997, with a retroactive date no earlier than 12:01 a.m., July 1, 1992**. . . .

ARTICLE VI

        (a)      The term "occurrence" as used herein means the definition as stated or in the ACCO-SIG Liability Protection Plan

-8-

Document.[3]  When claims made policies are involved individually or in the same "Event" with occurrence policies and/or other claims made policies, the date of the loss for the "Event" shall be determined as follows:

> 1.  If an occurrence policy is identified as being involved, then the date of loss shall be the date as determined under the occurrence policy; or
>
> 2.  If no occurrence policy is identified as being involved, then the date of loss will be the date the first claim is made under a claims made policy.

> (b)  The term "Claims made," as used in the Agreement, shall mean those claims first made against the insured during the policy period and occurring on or after the retroactive date, if any.

NAICO argues that the plain language of the Am-Re policy states that Am-Re provided ACCO-SIG with an occurrence-based reinsurance policy for the period running from July 1, 1997, to July 1, 1999, and that it provided ACCO-SIG with a retroactive occurrence-based policy stretching back to July 1, 1992.  In essence, NAICO interprets the bolded language above to mean: "Am-Re agrees to reimburse ACCO-SIG for General Liability, et al., as respects losses occurring after 12:01 a.m., July 1, 1992."  NAICO's conclusion derives from its argument that the Am-Re reinsurance policy "follows the form" of the ACCO-SIG policy with its member counties.  In other words, NAICO argues that, because ACCO-

---

[3]The ACCO-SIG Liability Protection Plan defines "occurrence" as "an accident . . . commencing during the policy period . . . or any intentional act by . . . a plan member, commencing during the policy period, which results in [injury or damage.]"

SIG offers occurrence-based coverage to its member counties, Am-Re offers retroactive occurrence-based coverage to ACCO-SIG.

In support of this "follows the form" interpretation, NAICO relies on the "Business Covered" section of Article I(a) (as quoted above), and the definition of "occurrence" in Article VI(a). We agree that these provisions support NAICO's conclusion that the retroactive portions of the Am-Re policy provide occurrence-based coverage.

Nonetheless, we agree with the district court and find NAICO's interpretation strained. NAICO ignores the "commencing on and after 12:01 A.M., July 1, 1997," language of the "Coverage" section of Article I(a) and renders the "claims made as applicable on and after 12:01 A.M., July 1, 1997" language of that article surplusage. We must give this contractual language some meaning. *See* Okla. Stat. Ann. tit. 15, § 157. Moreover, "this Court will not make a better contract by altering a term for a party's benefit." *Max True Plastering Co.*, 912 P.2d at 869.

Am-Re offers a similarly strained interpretation of the policy. Am-Re argues that the plain language of the bolded section above states that Am-Re provides occurrence-based reinsurance for the policy period and retroactive tail coverage reinsurance from July 1, 1992, until July 1, 1997. Thus, Am-Re interprets the above clause to mean:

> Am-Re agrees to reimburse ACCO-SIG for General Liability, et al., as respects losses occurring on and after 12:01 A.M., July 1, 1997. And Am-Re agrees to reimburse ACCO-SIG for claims made on and after 12:01 A.M., July 1, 1997, with a retroactive date no earlier than 12:01 a.m., July 1, 1992.

In suggesting this reading, Am-Re relies on: the definition of "claims made" in Article VI(b), the "commencing on and after 12:01 A.M., July 1, 1997," language of the "Coverage" section of Article I(a), and the "claims made as applicable on and after 12:01 A.M., July 1, 1997" language of Article I(a). As with NAICO, we agree that the provisions of the policy cited by Am-Re support its interpretation.

Nevertheless, Am-Re's interpretation ignores the definition of "occurrence" as provided in Article VI(a) and those portions of Article I(a) relied on by NAICO. As stated before, Oklahoma law does not allow us simply to ignore contractual language to form a more attractive contract for one party. *See* Okla. Stat. Ann. tit. 15, § 157; *Max True Plastering Co.*, 912 P.2d at 869.

We are also unable to construct a third reading of the Am-Re reinsurance policy that comports with the canons of contractal interpretation under Oklahoma law. *See* Okla. Stat. Ann. tit. 15, § 157. Thus, we find that the Am-Re reinsurance policy is susceptible to two interpretations (viz., the one offered by NAICO and the one offered by Am-Re), and we hold that the Am-Re reinsurance policy is ambiguous as to the type of retroactive reinsurance provided by Am-Re. *Max True Plastering Co.*, 912 P.2d at 869.

## C.    Am-Re's Parol Evidence

The district court, after it found the Am-Re reinsurance policy ambiguous, turned to parol evidence to discern the intent of the contracting parties.        *Fowler*, 15 P.3d at 507 (courts may admit parol evidence after finding an ambiguity); *Glass*, 959 P.2d at 594-95 (court may consider parol evidence on motion for summary judgment).  The district court held that Am-Re "ha[d] submitted uncontroverted evidence that the parties' intent in negotiating and executing the reinsurance agreements was for AM-RE to provide limited prior acts reinsurance on a claims made basis for losses reported/made to ACCO-SIG . . . [during] the term of the agreements."  We find no error in the district court's analysis.

The record is replete with evidence such as the following August 24, 1999, affidavit of Dusty Birdsong, ACCO-SIG's current litigation coordinator and the former Senior Claims Adjustor for ACCO-SIG's plan administrator.  Mr. Birdsong averred:

> It was the intent of ACCO-SIG . . . that the retroactive coverage provided under the ACCO-SIG Liability Protection Plan and Am Re specific policy requires that although a loss might have occurred prior to July 1, 1997 (but no sooner than July 1, 1993), coverage would be provided for that loss as long as the claim is first made against . . . ACCO-SIG   after July 1, 1997. . . . [A]pplying NAICO's logic and reasoning, member counties would be paying a one-year premium for a policy period that extended from July 1, 1993, to July 1, 1998.  Needless to say, the premium for such coverage would be astronomical and cost prohibitive.  Obviously, this was never the intent of ACCO-SIG or Am Re[.]

-12-

Am-Re also presented evidence to the district court that it had a similar intent upon entering into the policy agreement. For example, Gary E. Eberling, an assistant vice president for Am-Re, in an October 13, 1998, letter to an ACCO-SIG representative wrote, "[T]he intent of our coverage was to provide occurrence based coverage, as well as, tail coverage for the claims made coverage provided by NAICO."

The district court held, and we agree, that NAICO did not present any contradictory evidence. In its briefing on appeal, NAICO does not point to specific facts in the record contradicting Am-Re's evidence. Although we are not obligated to comb through the record to locate material not referenced by parties, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998), we conducted an independent review and failed to uncover any evidence contradicting that provided by Am-Re.

Instead of presenting contradictory evidence, NAICO attempted to cast doubt upon the credibility of some of Am-Re's evidence. Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion. *Jenkins*, 81 F.3d at 990 (requiring the nonmoving party to present specific facts demonstrating the existence of a material fact to be tried). Moreover, on "a motion for summary judgment we cannot evaluate credibility nor can we weigh evidence." *Cone v. Longmont*

*United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994). The district court, therefore, when evaluating a motion for summary judgment, should not determine whether it believes the movant's evidence; rather, it must determine whether the nonmovant offered any specific facts that demonstrate the existence of a material fact to be tried. NAICO failed to provide any evidence on this score. Thus, we, like the district court, find the parol evidence uncontested that ACCO-SIG and Am-Re sought to contract for occurrence-based coverage from July 1, 1997, to July 1, 1999, with retroactive tail coverage.

## IV. Conclusion

Because we find the Am-Re insurance policy ambiguous and the parol evidence of the contracting parties' intent uncontested, we AFFIRM.