FILED
United States Court of Appeals
Tenth Circuit

July 31, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEBORAH EKE,

       Plaintiff-Appellant,

v.

CARIDIANBCT, INC.,

       Defendant-Appellee.

No. 11-1483
(D.C. No. 1:10-CV-02019-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Deborah Eke appeals the district court's grant of summary judgment in favor

of CaridianBCT, Inc., on her discrimination and retaliation claims under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), and the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Ms. Eke worked for CaridianBCT and its predecessor companies from 1979 until she was terminated on April 8, 2009. Her last job title was Finished Goods Inventory Specialist, and her duties included daily emails; telephone calls; incoming orders; allocation of orders; communications for forecasts; delivery; switching schedules; meetings; various weekly and daily reports; and on a monthly basis: manually gathering inventory and forecast information from the company's world-wide operations, recording that information on a spreadsheet, and distributing it. Ms. Eke's position at CaridianBCT fell under the Global Supply Chain group. She reported to Gary Alcala, who reported to Grace Mills, who was the director of the Global Supply Chain group.

The company decided to implement a new software system called Sales Inventory Operating Planning (SIOP). Both Ms. Mills and Mr. Alcala were on the SIOP implementation team, and Ms. Mills "owned" the process for implementing SIOP. She testified, "I implemented the process within the organization and the software to support it. I know every piece of what the software can accomplish." App'x, Vol. I at 66. It is undisputed that SIOP would ultimately automate a portion of Ms. Eke's job duties. Ms. Eke knew that it would automate her manual processes for gathering inventory and forecasts, but she considered that only one quarter of her job duties. Still, the SIOP automation issue concerned Ms. Eke. But when she expressed her unease to Mr. Alcala he repeatedly told her not to worry, that her job

- 2 -

would be different, but she would still have a job. Mr. Alcala gave Ms. Eke these assurances as late as February or March of 2009.

Ms. Eke testified that in early 2009 it was obvious that the faltering economy was affecting CaridianBCT's sales. She remembered that employees received a memo from the company's President that addressed saving money, being efficient, and reducing costs. In response, there was talk among the employees about the potential for layoffs.

Craig Rinehardt, Senior Vice President of Operations at CaridianBCT, was Ms. Mill's supervisor. At some point in February or early March 2009, he asked all the directors in his group, including Ms. Mills, to analyze their respective groups to determine if any positions could be eliminated. He referred to this process as a reduction in force (RIF). Ms. Mills had a meeting with her own management team to inform them there was going to be a company-wide RIF.

Ms. Mills testified that Mr. Rinehardt told her to look for opportunities for positions in her group that had redundancies. She considered redundancies to be job functions that were duplicated due to automation, or duties that could be absorbed into another function. Ms. Mills testified that, after looking at the entire Global Supply Chain group, she identified two positions that had redundancies: Ms. Eke's job and Keith Chamber's job. Mr. Chambers reported directly to Ms. Mills as a Strategic Sourcing Manager. Ms. Mills listed Ms. Eke and Mr. Chambers on a spreadsheet that she emailed to Mr. Rinehardt on March 9, 2009. Her email and the

spreadsheet both indicated that the two positions listed were being eliminated. At Mr. Rinehardt's request, another employee compiled a larger spreadsheet listing all the employees in Mr. Rinehardt's group, including Ms. Eke, who had been identified for layoff in the RIF. Mr. Rinehardt received this spreadsheet by email on March 11, 2009. According to Mr. Rinehardt, the decisions regarding which employees would be included in the RIF were final at that time. Ultimately, over 200 employees were laid off by CaridianBCT in the RIF.

Ms. Mills testified that she alone made the decision to eliminate Ms. Eke's position, based on her determination that SIOP would replace at least ninety percent of Ms. Eke's job function. She made that assessment considering her knowledge, as the SIOP process owner, of everything that the software can accomplish, and her understanding of Ms. Eke's job function. She testified that Mr. Alcala had previously described Ms. Eke's job as updating spreadsheets of sales forecast information from the company's operations around the world.

After receiving the direction from Mr. Rinehardt to find jobs that could be eliminated, Ms. Mills spoke only to him regarding terminating Ms. Eke. At her deposition two years later, Ms. Mills could not recall what she or Mr. Rinehardt had said. In making her decision, Ms. Mills did not speak to Mr. Alcala to obtain further information about Ms. Eke's job duties, nor did she consult with him on whether to eliminate Ms. Eke's position. She also did not inquire whether Ms. Eke had additional job duties that would need to be taken over by other employees or how

- 4 -

Ms. Eke's termination would affect her group. Ms. Mills testified that she did not examine any documents, such as Ms. Eke's written job description or her past performance reviews, in deciding to eliminate Ms. Eke's position, although that information was available to her. When asked what efforts she had made to find Ms. Eke another position at CaridianBCT, Ms. Mills stated that she did not have any open positions within her group, and she did not look for any open positions for Ms. Eke outside of her group.

Ms. Mills sent an email to John Banich, who was one of her peers at CaridianBCT, telling him that she had decided to eliminate Ms. Eke's job. She did this as a courtesy to Mr. Banich because Ms. Eke supported Mr. Banich's group. Ms. Mills told Mr. Alcala of her decision to terminate Ms. Eke "[a]t the time that it was ready to happen." App'x, Vol. III at 188 (testimony by Mr. Alcala regarding when Ms. Mills told him about Ms. Eke's job being eliminated).

On March 17, 2009, Jack Olsen, Ms. Eke's attorney, sent an email to Mr. Alcala, Mr. Banich, Randy Leonard, and the company's Vice President of Human Resources. Messrs. Banich and Leonard were former supervisors of Ms. Eke. Mr. Olsen's email stated, "This is to inform you that Deb Eke has retained Olsen & Brown LLC to investigate gender and age discrimination in her employment and treatment over recent months." *Id.*, Vol. I at 79. Mr. Olsen provided no further information regarding the nature of Ms. Eke's discrimination allegations. She

testified that this email was the first time she or anyone on her behalf had notified the company that she believed she was a victim of gender or age discrimination.

On April 8, 2009, Ms. Eke was called into a meeting by Ms. Mills. A representative from Human Resources was also present. Ms. Mills informed Ms. Eke that her job had been eliminated and someone handed Ms. Eke a letter from Mr. Rinehardt. That letter informed her that she was released from her employment effective that day. It also referred generally to "changes being made within the organization," *id.*, Vol. I at 81, but it did not address Ms. Eke's position specifically. Ms. Eke ultimately became aware that other employees were also being laid off. She testified that she didn't see it coming. She knew of no plan to eliminate her job or that she had been placed on a layoff list. At the time she was laid off, Ms. Eke was 58 years old. She believed that the decision to terminate her job was motivated by her age and her gender, and was in retaliation for her submitting a discrimination claim.

After informing Ms. Eke of her termination, Ms. Mills called the entire Global Supply Chain group to a meeting to inform them about the RIF and tell them whose jobs had been eliminated in her group. Ms. Eke's former position was not subsequently filled as of June 2011. Some of Ms. Eke's former duties were assumed by other employees, including Mr. Alcala, Mr. Banich, Mr. Leonard, and Lela Nichlas.

Ms. Eke filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on May 2, 2009. She alleged that her termination was the result of discrimination based on sex and age, as well as retaliation. She stated further, "I also believe that I will be foreclosed from applying for future job openings because I have dared to complain about discrimination." *Id.*, Vol. III at 182.

In December 2009, Ms. Eke applied for a position at CaridianBCT that was formerly held by Wayne Scheck. Ms. Eke had previously cross-trained on Mr. Scheck's job in 2007 or 2008, before he decided to postpone his retirement. Mr. Scheck ultimately retired in early 2010. Ms. Eke felt that, based on her cross-training and her other experience at the company, she was qualified for Mr. Scheck's former job. But she did not receive an interview or a job offer from CaridianBCT, and the position was instead offered to a younger man. Ms. Eke did not amend her EEOC charge or file a new charge to allege a discrimination claim based on CaridianBCT's failure to hire her for Mr. Scheck's former position.

Ms. Eke filed this action in district court on August 23, 2010, alleging claims under Title VII, the ADEA, and state law. CaridianBCT moved for summary judgment on all claims. After Ms. Eke confessed judgment on her state-law claims, the district court granted CaridianBCT's motion on the remaining claims.

## Standard of Review

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders*, 544 F.3d at 1105 (quotation omitted).

## Discussion

"A plaintiff alleging discrimination may prove her case by direct or circumstantial evidence." *Id.* Because Ms. Eke relies on circumstantial evidence, we analyze her claims under the *McDonnell Douglas* burden-shifting framework to determine whether CaridianBCT is entitled to summary judgment. *See id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). That framework requires Ms. Eke to initially demonstrate a prima facie case of discrimination or retaliation. *See id.* The burden then shifts to CaridianBCT to provide a "legitimate, nondiscriminatory reason for its employment decision." *Id.* At that point the burden shifts back to Ms. Eke "to show that there is a genuine dispute of material fact as to whether [CaridianBCT's] proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (quotation omitted).

**Retaliatory Termination**

Ms. Eke alleged that CaridianBCT terminated her employment in retaliation for her complaint of age and gender discrimination. In order to establish a prima facie case of retaliation, Ms. Eke must show: "(1) . . . she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). Ms. Eke identifies as her protected activity Mr. Olsen's March 17, 2009, email to several CaridianBCT employees, stating: "This is to inform you that Deb Eke has retained Olsen & Brown LLC to investigate gender and age discrimination in her employment and treatment over recent months." App'x, Vol. I at 79. She notes that she was terminated only twenty-two days later.

"Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA [or Title VII]." *Hinds*, 523 F.3d at 1203. The district court held that Mr. Olsen's email did not qualify as protected activity because it only gave notice of a *possible* discrimination complaint following further investigation. We agree with Ms. Eke that the district court's conclusion was in error. Although Mr. Olsen's email stated his intent to investigate Ms. Eke's unspecified allegations of discrimination, it certainly conveyed her

- 9 -

*concern* that she had been subjected to gender and age discrimination in her employment with CaridianBCT.

But Ms. Eke nonetheless fails to establish a prima facie case of retaliation. The uncontradicted evidence shows that Ms. Mills' decision to terminate her employment was final as of March 11, 2009, six days *before* Mr. Olsen's email arrived at CaridianBCT. Ms. Eke admits that Mr. Olsen's email was the first time that she or anyone on her behalf complained of discrimination. Thus, even if CaridianBCT's stated reason for terminating Ms. Eke's employment was pretextual, the true reason could not have been retaliation for her later discrimination complaint. *See Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). In *Sabourin*, we held that the true reason for terminating the plaintiff's employment could not have been retaliation for his request for leave under the Family and Medical Leave Act when that request post-dated his employer's final decision to eliminate his position. *Id.* As in *Sabourin*, Ms. Eke points to no "evidence of any hesitation or reconsideration" by Ms. Mills after she selected Ms. Eke for inclusion in the RIF, *id.* at 959, or any evidence that the employees identified as of March 11, 2009, for layoff in the RIF were not actually terminated. Thus, there is no genuine issue that Ms. Eke's termination in the RIF was wholly independent of her later-submitted discrimination claim, and she has therefore failed to show a causal connection between her protected activity and the termination decision. *See id.* We affirm the

district court's grant of summary judgment in favor of CaridianBCT on Ms. Eke's retaliatory termination claim.

## Retaliatory Failure to Hire

Ms. Eke also alleged that CaridianBCT's refusal to hire her for Wayne Scheck's former position was in retaliation for her discrimination complaint. She applied for that position in December 2009, after she had filed her EEOC charge on May 2, 2009. The district court held that she failed to exhaust her administrative remedies with respect to this incident because she did not file a new EEOC charge or amend her existing charge to encompass this claim. Ms. Eke responds that her May 2, 2009, charge was sufficient to exhaust her administrative remedies regarding this failure-to-hire claim because she stated: "I also believe that I will be foreclosed from applying for future job openings because I have dared to complain about discrimination. App'x, Vol. III at 182.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation and alteration omitted). In her argument in favor of exhaustion, Ms. Eke appears to rely on a "continuing violation" theory, which we rejected in *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Under that now-defunct theory, a judicial complaint could "encompass any discrimination like

or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Id.* (quotation omitted). In *Martinez*, for example, the plaintiff had attempted to litigate claims related to adverse employment actions—a reprimand and his termination—that occurred after he filed his EEOC charge, without addressing these incidents in an amended or new EEOC charge. *Id.* at 1210. In opposition to his former employer's summary judgment motion, he maintained that these incidents were part of an ongoing pattern of retaliation. *Id.* at 1211.

In *Martinez*, we recognized that the Supreme Court had abrogated the continuing violation doctrine in *Morgan*, holding instead that "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* at 1210 (quotation omitted). We therefore held that the plaintiff in *Martinez* was required to exhaust his administrative remedies with respect to the discrete acts involving his reprimand and termination. *See id.* at 1211; *see also Jones*, 502 F.3d at 1186 (holding adverse employment actions occurring after plaintiff filed his administrative charge did not fall within the scope of the charge). And we called out an employer's refusal to hire as a discrete act that was both "easy to identify" and covered by this rule. *Martinez*, 347 F.3d at 1210-11. Because Ms. Eke never filed a charge with the EEOC regarding CaridianBCT's refusal to hire her for Mr. Scheck's former position,

she failed to exhaust her administrative remedies with respect to that claim, and we affirm the district court's grant of summary judgment in favor of CaridianBCT.

### Discriminatory Termination
### Prima Facie Case

Ms. Eke alleges that CaridianBCT decided to terminate her employment based on her age and her gender. In order to establish a prima facie case of discrimination in the context of a RIF, Ms. Eke must show: "(1) that she is within the protected age [or gender] group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision." *Beaird v. Seagate Tech., Inc.* 145 F.3d 1159, 1165 (10th Cir. 1998) (noting prima facie case is the same for age and gender claims in the RIF context, *id.* at 1167 n.4). "The fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger [or male] employees during the RIF." *Id.* (quotation and brackets omitted). Thus, "[e]vidence that an employer fired qualified older [or female] employees but retained younger [or male] ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent . . . ." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988); *see also Beaird*, 145 F.3d at 1167 ("[A] plaintiff who is fired pursuant to a RIF and who held a similar position to a younger retained employee can satisfy the fourth element.") In *Beaird* we held that the plaintiffs established the fourth element of

their prima facie cases of age and race discrimination where at least one younger and/or nonminority employee was retained in the same job code. *Id.* at 1168.

Ms. Eke identified two younger women in her former group who retained their positions in the RIF at CaridianBCT: Lela Nichlas (a decade younger than Ms. Eke) and Galina Glover (in her 30s). She also noted that the younger man hired to replace Mr. Scheck retained his job in the RIF. The record further indicates that three male employees in Ms. Eke's former group, two of whom were younger than Ms. Eke, retained their jobs in the RIF. And five female employees in Ms. Eke's former group who were younger than her also retained their positions. *See* App'x, Vol. II at 84.

CaridianBCT asserts that Ms. Eke has not identified valid comparators by focusing only on the younger and male employees retained in the RIF.[1] The company notes that the majority of the employees remaining in Ms. Eke's group after the RIF were both female and over 40, and most of those remaining were over 50.[2]

---

[1] The company does not challenge Ms. Eke's proposed comparators on the basis that their positions were not "similar" to Ms. Eke's former position.

[2] CaridianBCT's suggestion that "younger" employees includes only those younger than age 40 is misplaced. "The younger employee need not be outside the ADEA-protected class. But the employee cannot be *insignificantly* younger because evidence that such an employee was retained would be insufficient to create an inference of illegal discrimination." *Beaird*, 145 F.3d at 1167 n.4 (citation omitted). Here the employees retained by CaridianBCT in Ms. Eke's group who were younger than her were ages 32, 33, 44, 48, 50, and 56. Although the age difference between Ms. Eke, at 58, and the retained employee who was 56, *may* be insignificant, the remainder of the younger employees were not insignificantly younger than Ms. Eke as a matter of law. *See Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 994-96 (10th Cir. 2005) (rejecting bright-line rule that five-year age difference was insignificant as a matter of law).

The company contends that "[t]he fact that some men or some younger women were retained after the RIF does not suffice to show discrimination." Aplee. Response Br. at 12. But under our case law, that is precisely the evidence that satisfies the fourth prong of the prima facie case.[3]

We conclude that Ms. Eke met her prima facie burden on her age and gender discrimination claims. Having done so, CaridianBCT came forward with a legitimate, nondiscriminatory reason for its employment decision: Ms. Eke's job was eliminated in a company-wide RIF based on Ms. Mills' determination that at least ninety percent of her job function was automated by the SIOP software. Ms. Eke, in turn, contends that CaridianBCT's proffered explanation for her termination is a pretext for age and gender discrimination.

## Pretext

"Generally, a plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[3]    CaridianBCT's citation to *English v. Colo. Dep't of Corrs.*, 248 F.3d 1002 (10th Cir. 2001), does not support its contention. In that case, which did not involve a RIF, we held that the plaintiff had met his prima facie burden. *See id.* at 1008. Our subsequent discussion of valid comparators was in the context of evaluating whether the plaintiff had established pretext based on dissimilar treatment of similarly situated, non-protected employees. We said that a plaintiff cannot "completely ignore a significant group of comparators who were treated equally or less favorably than he." *Id.* at 1012 (quotation and brackets omitted); *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1139-40 (10th Cir. 2000) (noting post-RIF "balanced workforce" evidence did not negate plaintiff's prima facie case, but was "more appropriately evaluated against the employer's proffered legitimate, nondiscriminatory reason for termination").

- 15 -

employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Sanders*, 544 F.3d at 1106 (quotation omitted).[4] In the RIF context, proof of pretext may include (but is not limited to) evidence that the plaintiff's termination was inconsistent with the RIF criteria articulated by her employer; a claimed business judgment "so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination"; the employer's inconsistent application of the RIF criteria; or other procedural irregularities in the RIF process. *Id.* at 1106-07. In determining whether the plaintiff has sufficiently demonstrated pretext, "we consider the evidence as a whole." *Id.* at 1107. "However the plaintiff may choose to demonstrate pretext, we have definitively rejected a 'pretext plus' standard; in order to survive summary judgment, a plaintiff generally need not provide affirmative evidence of discrimination beyond the prima facie case and evidence that the employer's proffered explanation is pretextual." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). "No additional evidence is necessary to show discrimination because proof that the defendant's explanation is unworthy of

---

4    Ultimately, in proving her claim under the ADEA, Ms. Eke must show that her age was the but-for cause of her termination. This does not require her to prove that age was the sole motivating factor, but she must show that "age was the factor that made a difference." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quotation omitted).

credence is simply one form of circumstantial evidence that is probative of intentional discrimination." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1280 (10th Cir. 2010) (quotation and brackets omitted).[5]

Ms. Eke's pretext arguments are many and various. She first asserts that the elimination of her position after thirty years of service and consistently positive performance evaluations is evidence of pretext. Likewise, she points to Ms. Mills' failure to investigate her past performance in connection with selecting her job for elimination and Ms. Mills' decision to retain lesser qualified employees rather than Ms. Eke. These contentions ignore the selection criteria used in the RIF. Mr. Rinehardt instructed Ms. Mills to look for job redundancies. There is no evidence that length of service or relative qualifications between different employees were factors relevant to the company's RIF selection process. An employer may choose the criteria it wishes to employ to conduct a RIF and "we will not disturb that exercise of [a] defendant's business judgment." *Beaird*, 145 F.3d at 1169; *see also Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 986 (10th Cir. 1996) ("[T]he manner in which a company chooses to conduct a RIF is within the company's sound business discretion . . . ."). While Ms. Eke believes that her tenure and past performance should have been considered, she "cannot defeat summary judgment by claiming that

---

[5] Ms. Eke argues that the district court erred by applying a pretext-plus standard in granting CaridianBCT's summary judgment motion. The record of the summary judgment hearing suggests that Ms. Eke may be correct. Because our review is de novo and we apply the correct standard, we need not separately address Ms. Eke's contention.

she would have been retained if different RIF criteria had been used." *Beaird*, 145 F.3d at 1169.

Ms. Eke also points to what she contends are disturbing procedural irregularities in the RIF selection process. This includes Mr. Rinehardt's failure to give Ms. Mills any dollar or headcount numbers that she needed to eliminate; Ms. Eke's lack of prior knowledge regarding the RIF itself and her placement on the layoff list; the lag time between her selection for the RIF and her actual termination; the fact that Ms. Mills, rather than Mr. Alcala (Ms. Eke's direct supervisor), made the termination decision and informed her of it; and the lack of any explanation from the company of the basis for her selection in the RIF. Ms. Eke does not contend—and presents no evidence—that these aspects of the RIF were "irregularities" in the sense that they were applied selectively to her and not to the other 200+ employees who were also laid off. Instead, she challenges CaridianBCT's business judgment in proceeding in this manner. But it is certainly not unusual for an employer to involve only upper management in RIF decisions and to maintain the confidentiality of those determinations until they are ready to be implemented. And none of the other cited aspects of CaridianBCT's RIF process were "so idiosyncratic or questionable that a factfinder could reasonably find that [the RIF was a] pretext for illegal discrimination." *Sanders*, 544 F.3d at 1106.[6]

---

[6]    Ms. Eke argues that Mr. Alcala's repeated assurances that she would not lose her job are evidence of pretext. But she does not dispute that Mr. Alcala was not

(continued)

Ms. Eke also argues that Ms. Mills' inaccurate assessment of the extent to which her job was automated by SIOP is evidence of pretext. We emphasize that Ms. Eke does not dispute that *some portion* of her duties were automated by the new software. The only dispute is whether it was as much as ninety percent, as Ms. Mills concluded, or only twenty-five percent according to Ms. Eke. Other witnesses also testified variously regarding the extent that SIOP automated Ms. Eke's duties and how much of her work had to be reassigned after she was terminated. Thus, there is evidence that Ms. Mills' conclusion regarding the extent of the redundancy was erroneous, but that is not enough to show pretext.

> [T]he relevant "falsity" inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination. The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citation omitted).

Therefore, Ms. Eke must present evidence that Ms. Mills did not honestly believe that her job functions were largely automated by SIOP and decide in good faith to eliminate her position on that basis. *See id.* at 1251-52 (rejecting contention that

---

involved in or aware of the decision to lay her off until after that determination had been made by Ms. Mills. *See* App'x, Vol. III at 188 (testimony by Mr. Alcala that Ms. Mills told him "[a]t the time that it was ready to happen" that Ms. Eke's job was being eliminated).

pretext is shown solely by demonstrating that the "true facts" associated with the termination differ from what the employer honestly believed); *Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cnty.*, 661 F.3d 477, 485 (10th Cir. 2011) (noting mistaken belief can be legitimate, non-pretextual reason).

Ms. Eke focuses on the process Ms. Mills used to select her job for elimination, which she characterizes as "bizarre." Ms. Mills testified that she based her conclusion there was redundancy on Mr. Alcala's description of Ms. Eke's duties and her own superior knowledge of SIOP.[7] Ms. Eke notes that Ms. Mills did not confer with Mr. Alcala before selecting her for the RIF (either to learn more about Ms. Eke's job function or for his input in the decision); she did not review any paperwork, including Ms. Eke's written job description; she did not create any document explaining her basis for selecting Ms. Eke's job for elimination; and she made no attempt to find Ms. Eke another job within CaridianBCT instead of laying her off.[8] She also asserts that Ms. Mills made no effort to consider anyone else in her group for termination, but that claim is not supported by the record.

---

[7]    Ms. Eke contends there is evidence of pretext based on the subjective nature of Ms. Mills' determination. But she points to nothing "subjective" about it. Ms. Mills compared what she knew about Ms. Eke's job function with what she knew about the SIOP software.

[8]    Ms. Eke places particular emphasis on Ms. Mills' failure to try to find her another position within CaridianBCT rather than laying her off. But there is no evidence that the company's RIF selection process directed the decision makers to find alternate positions for employees whose jobs were selected for elimination, or even that any decision maker did so. And Ms. Eke cites no authority supporting her

(continued)

- 20 -

Again, Ms. Eke does not point to evidence that Ms. Mills' process was any different from the processes used by her peers at CaridianBCT in deciding which jobs to eliminate in their groups. And other than Ms. Eke's bald assertion, there is no evidence that Ms. Mills' process was so out of the ordinary—so idiosyncratic or questionable—that it calls into doubt whether her business judgment was honestly held. While, in hindsight, Ms. Mills could have done more to understand the full parameters of Ms. Eke's job duties, there is no evidence suggesting that she came to her belief regarding the redundancy between Ms. Eke's job and SIOP (a fact that Ms. Eke does not entirely dispute) in bad faith. *See Young*, 468 F.3d at 1252 (affirming summary judgment where there was no "evidence bearing directly on whether the defendant authorized a termination in good faith or instead sought to pursue a discriminatory purpose through subterfuge").

Ms. Eke also asserts that Ms. Mills inconsistently applied the redundancy criterion in deciding which positions to eliminate. She points to Ms. Mills' acknowledgement that other job functions in the Global Supply Chain group were taken over by SIOP. Ms. Mills testified that Peter Laruelle, the manager of the affected employees, rearranged their duties as part of the process change in implementing SIOP. Ms. Mills did not know if Mr. Laruelle rearranged their job duties so that he would not have to terminate any them, but none of those employees

proposition that an employer's failure to consider placing an employee in another job before terminating her employment is evidence of pretext.

- 21 -

was laid off because of SIOP automation. Ms. Mills testified further that, in connection with the RIF, she assessed Mr. Laruelle's team to determine if any of his employees had significant redundancies, but she found none.

Inconsistent application of RIF criteria can be evidence of pretext. *Sanders*, 544 F.3d at 1106. But the record here does not support Ms. Eke's asserted inference that Ms. Mills chose to eliminate her job based on a significant redundancy between SIOP and her duties, while ignoring other significant redundancies in the Global Supply Chain group. Whether the redundancy amounted to twenty-five percent or ninety percent, there is no evidence that any other position in Ms. Mills' group was automated by SIOP to the extent that Ms. Eke's duties were at the time Ms. Mills made her layoff decisions. And the fact that Mr. Laruelle dealt with overlap between his employees' existing duties and the new SIOP functionality (the extent of which is not revealed by the record) by rearranging job functions, also does not call into question the credibility of Ms. Mills' stated reason for eliminating Ms. Eke's job. Ms. Mills testified that Mr. Alcala had authority to rearrange duties within his group. He apparently had not done so before the RIF decisions were made, but there is no evidence that Ms. Mills instructed him not to or otherwise prevented him from doing so.

Ms. Eke also contends that the historically male-dominated environment at CaridianBCT is evidence of pretext. A plaintiff's opinion that discrimination at a company is pervasive is not alone sufficient to establish pretext, without specific

examples of such discrimination. *See Beaird*, 145 F.3d at 1170. Here Ms. Eke contends that John Banich maintained a good-old-boys club and managed female employees through intimidation, including making one of his female employees cry. She also claims that Mr. Banich was civil, jovial, and friendly with the male employees on his management staff, but had no such camaraderie with his female managers. Regarding Ms. Eke's relationship with Mr. Banich, she asserts that he once said to her "that he didn't know whether to slap [her] or run [her] over with a truck." App'x, Vol. 1 at 48. She has no idea what precipitated that statement, but she never heard him say that to a man, and she feels that he would not have said it to man. Ms. Eke also points to Randy Leonard's comment in one of her performance reviews that she needed to react with less emotion. She says, in contrast, that male employees were allowed to express their emotions by yelling at one another, but she does not provide any evidence that male employees were not also counseled against emotional behavior. She also claims that Mr. Leonard favored younger, female employees, specifically one employee with whom he smoked every morning. Finally, she asserts that Mr. Alcala did not allow her to take a computer class because of budgetary issues, while Mr. Leonard gave a younger, female employee permission to do so. She provides no other evidence regarding which employees were or were not permitted to take classes by these two different supervisors.

Even in the aggregate, Ms. Eke's cited evidence does not show an atmosphere of pervasive age or gender discrimination at CaridianBCT sufficient to support a

finding of pretext in this case.  Nor does she connect any of her specific examples of alleged discrimination to Ms. Mills' decision to eliminate her job.

> Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.  To show such animus, the plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate her.  A causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff.

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (citations and quotation omitted).  To the extent the comments or actions identified by Ms. Eke were directed at her, she fails to provide enough information for us to understand the context, in order to support an inference of discriminatory animus based on her age or gender.  *Id.*; *see also Beaird*, 145 F.3d at 1170 (noting "instances of claimed discrimination . . . can only be speculatively attributed to discriminatory animus"); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (noting isolated or ambiguous comments are too abstract to support inference of discrimination).  Moreover, there is no evidence that Mr. Banich, Mr. Leonard, or Mr. Alcala played any role in Ms. Mills' termination decision, or that Ms. Mills ever acted in a manner, as to Ms. Eke or anyone else, that was discriminatory toward women or employees over age 40.  Ms. Eke has not shown a nexus between any of the cited comments or actions and her layoff.

Finally, Ms. Eke asserts that a jury could conclude that Ms. Mills is not a credible witness and therefore disbelieve her testimony regarding CaridianBCT's

proffered reason for her termination. "Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion." *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004). Instead, a nonmoving party must present specific facts demonstrating the existence of a material fact to be tried. *Id.* Ms. Eke asserts that she establishes a genuine issue as to pretext by showing that Ms. Mills' deposition testimony was patently incredible based on her many "I don't recall" answers.

To be sure, in the pretext analysis the credibility of CaridianBCT's proffered reason is at issue, and that explanation depends largely (but not entirely) on the credibility of Ms. Mills' testimony. But "[t]o raise an inference of pretext in the face of the employer's legitimate, nondiscriminatory explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005). And allegations of perjured testimony must relate to a material issue in order to undermine a grant of summary judgment. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1176 (10th Cir. 2005) (holding "potentially perjurious" evidence on a nonmaterial issue in discrimination case was insufficient to reverse summary judgment).

In *Jaramillo*, the plaintiff argued that her employer failed to promote her based on her gender. 427 F.3d at 1306. In an attempt to show pretext, the plaintiff produced evidence that the decision maker had provided two different explanations

- 25 -

for why she was not promoted, one of which was factually incorrect. *Id.* at 1309. Although the plaintiff's evidence called into question the decision maker's credibility, we held it was insufficient to establish pretext. We concluded the decision maker's initial false explanation was "simply . . . not outrageous enough to undermine [the employer's] legitimate explanation for its decision." *Id.* at 1310.

Here Ms. Eke does not identify any inconsistent statements by Ms. Mills as to any material fact. Indeed, she points to no *facts* that tend to put Ms. Mills' credibility in question. Instead she focuses on Ms. Mills' lack of recollection in her deposition, two years after Ms. Eke's termination, regarding Ms. Eke's discrimination complaint, as well as some of the details regarding Ms. Mills' decision to eliminate Ms. Eke's position. First, Ms. Eke argues that it is simply not believable that Ms. Mills could not recall learning of Ms. Eke's discrimination complaint shortly after it was received by the company because a "management-wide" email about it was distributed at CaridianBCT. Aplt. Opening Br. at 26. But there is no evidence of a "management-wide" email, much less evidence that any such email was sent to Ms. Mills. Ms. Eke cites only her own testimony about an email addressed to her and all of her previous managers instructing the recipients to retain documents regarding her, and a declaration by Mr. Olsen stating that he had seen in the documents produced by CaridianBCT a memo about Ms. Eke's discrimination complaint that was addressed to the company's Vice Present of Human Resources and its General

Counsel.[9]  Moreover, even if there were evidence supporting an inference that Ms. Mills was not credible when she testified that she could not recall learning of Ms. Eke's discrimination complaint, that issue is not material to the credibility of CaridianBCT's reason for terminating Ms. Eke's employment.  We have already independently concluded that there is no causal connection between Ms. Eke's complaint and Ms. Mills' decision to eliminate her job.

Ms. Eke also points to allegedly incredible testimony by Ms. Mills that was related to her termination decision.  Specifically, Ms. Mills testified that she did not recall exactly what Mr. Rinehardt said to her about redundancies; she did not remember what was said when she and Mr. Rinehardt spoke about terminating Ms. Eke; she could not recall whether she discussed with Mr. Alcala the rearrangement of duties within his group; and she could not remember whether she conferred with Human Resources about terminating Ms. Eke.  Ms. Eke also notes that Ms. Mills could not recall whether she ever observed Ms. Eke performing her job duties.  Without pointing to any *facts* supporting an inference that Ms. Mills did not, in fact, lack a recollection of these issues, Ms. Eke simply asserts that her testimony about her lack of recollection was not believable.  This is nothing more than a bare attack on the credibility of a summary judgment witness's testimony, which is not

---

[9]     Curiously, Ms. Eke did not file either the email or the memo in support of her opposition to CaridianBCT's summary judgment motion.

sufficient, standing alone, to avoid summary judgment. *Nat'l Am. Ins. Co.*, 358 F.3d at 742.

Because we have concluded that Ms. Eke failed to produce evidence showing that CaridianBCT's proffered reason for terminating her employment was pretextual, we affirm the district court's grant of summary judgment in favor of CaridianBCT on her discrimination claims.

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge