**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD FINNEY,

Plaintiff - Appellant,

v.

LOCKHEED MARTIN
CORPORATION,

Defendant - Appellee.

No. 15-1140
(D. Colo.)
(D.C. No. 1:13-CV-00869-MSK-NYW)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

Richard Finney brought this employment discrimination action against his

former employer, Lockheed Martin Corporation. Finney alleges that his

termination was the product of (1) age discrimination in violation of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, and

(2) retaliation in violation of the ADEA. Lockheed, however, claims to have fired

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Finney as part of a larger reduction in force (RIF) and because of Finney's poor work performance.

The district court granted summary judgment for Lockheed, and Finney appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Finney worked for Lockheed as an electrical engineer for over thirty years. Through 2008, he received positive performance evaluations for his work. In 2008, because the project on which he was staffed was nearing completion, Finney began working part-time on the Gravity Recovery and Interior Laboratory (GRAIL). It was on this project that Finney's superiors began to report that his work had deteriorated. His supervisor noted, among other things, that he was not meeting project milestones, did not update his superiors on project statuses, and his functional and interpersonal skills needed improvement. Finney transitioned to a full-time GRAIL position in April 2009 in order to remain on that project. Even so, his supervisor was displeased enough that he unsuccessfully tried to remove Finney from the GRAIL project.

Finney received his first negative review at Lockheed in 2009 after joining GRAIL full-time. Lockheed uses a five-tier rating system. Employees receive ratings from 1 for "high contributors" to 5 for "unsatisfactory." Finney received a 4, or "basic contributor" rating. He complained internally about this review and also filed an age discrimination complaint with the EEOC in June 2010. But

Finney's supervisor thought his performance improved the following year, and he received a 2, or "successful contributor" rating for 2010.

After completing his work on GRAIL, Finney was referred to an open position on the Global Positioning System III (GPS-III) program. After interviewing Finney, David Chang, the manager of GPS-III, was concerned that Finney was not a good fit for the project. He worried particularly that Finney did not possess the technical skills necessary for the project. Furthermore, Lockheed divides its engineering positions into five grades, where Grade 5 is the highest. Chang worried Finney was not a good fit because the open position was for a Grade 3 Engineer while Finney was a Grade 5 engineer. Because of these concerns, Chang agreed to "borrow" Finney for a trial period to see if he could handle the work.

After Finney had worked on GPS for three months, Chang invited him to apply for the open position. Chang hired him for the Grade 3 position, but, in order to better accommodate Finney, negotiated with Lockheed for him to be classified as a Grade 4 Senior Staff Engineer. There was no pay reduction associated with the reclassification from Grade 5 to Grade 4 status. But in June 2011, Finney complained to Chang that this reduction in status was the result of discrimination. He filed a second complaint with the EEOC.

While Chang remained Finney's overall supervisor, in 2011 Timothy Halbrook became his immediate supervisor. Finney asked that Halbrook help him

-3-

return to a Grade 5 position, the level of engineer Finney had been before GPS-III. But Halbrook determined that Finney was not performing the work expected of a Grade 5 engineer. Halbrook rated Finney a 4, or "basic contributor" in 2011. Halbrook issued this rating because he saw Finney struggle to complete tasks, some of which were overdue. After this mediocre review, Finney complained to Lockheed's human resources department, stating he believed it was an act of retaliation for his earlier EEOC complaints. Halbrook placed Finney on a Performance Improvement Plan (PIP) to improve Finney's work and also help him return to a Grade 5 engineer. But Finney did not complete the PIP and did not show any improvement in his performance. Instead, Finney began looking for a different job, and Halbrook tried to help locate a position that would be a better fit for his skill set.

In 2012, Lockheed implemented a RIF that ultimately resulted in 260 layoffs. As part of a plan to reduce GPS-III by thirty employees, Halbrook and Chang decided, based on the program's budget and needs, to eliminate one Grade 4 engineer from their team. Finney was one of the thirty-four Grade 4 engineers on GPS-III. Of those thirty-four Grade 4 engineers Halbrook and Chang considered for the RIF, twelve were the same age as or older than Finney. Six were over the age of fifty-five.

To carry out the RIF, Lockheed held what it called a Talent Differentiation Ranking Session (TDR) to evaluate and rank employees. At the TDR, managers

and supervisors of all Grade 4 engineers reviewed their employees' performances and then submitted the assessments to human resources. Participants rated engineers in a number of areas, including job complexity and skill level. These TDR scores were combined with the company's annual employee performance reviews and adjusted for length of service, so that more years of service resulted in a better score. Using what was essentially a mathematical formula, Lockheed eliminated the Grade 4 engineers with average or better than average scores from consideration for layoff. After ranking the remaining employees, Finney had the worst score of all Grade 4 engineers. Accordingly, Chang notified Finney that he would be terminated if he could not find a new project at Lockheed. Because Finney was unable to do so, he was terminated.

In August 2012, Finney filed a third complaint with the EEOC, alleging this time that he had been fired because of his age and in retaliation for his earlier complaints internally and to the EEOC. After receiving a Notice of Right to Sue in January 2013, Finney filed suit in federal court, alleging age discrimination, hostile work environment, and retaliation for having engaged in a protected activity. The district court entered an order granting Lockheed's motion for summary judgment and dismissing all claims. Finney appealed. Because he did not raise an argument about a hostile work environment in his opening brief, we consider that claim waived. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

# II. Analysis

We review the district court's grant of summary judgment de novo. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). We view the evidence and make all inferences in the light most favorable to the non-moving party. *Id*. In the absence of a genuine issue of material fact, the moving party is entitled to summary judgment. *Id*.

## A. Age Discrimination

When there is no direct evidence of an employer's age discrimination, an employee must establish a prima facie case of discrimination in violation of 29 U.S.C. § 623(a) by showing "1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (brackets in original); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165–66 (10th Cir. 1998) (discussing prima facie case requirements in the RIF context).

After an employee has satisfied his burden of establishing a prima facie case of discrimination, the burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason" for its termination decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once

the employer has done so, the burden shifts back to the employee to show that the proffered reason is pretextual. *Jones*, 617 F.3d at 1278–79.

A plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). In RIF cases, a plaintiff can show pretext by "present[ing] evidence that (1) his own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006).

Lockheed does not dispute that Finney was in a protected group and was discharged, satisfying the first and second elements of a prima facie case. Lockheed disagrees, however, that Finney's work was satisfactory or that he was treated less favorably than younger employees. For purposes of this appeal, we will assume without deciding Finney has met the third element based on his subjective views about the adequacy of his work performance. *See MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (finding an employee may satisfy the third element by testifying his work was adequate, even

if disputed by the employer). And because younger employees were retained, we will also assume without deciding he met the fourth element.

Turning to the question of whether Finney has shown any evidence of pretext, we agree with the district court and conclude that he has not. First, as Lockheed points out, it went through numerous reductions in force during the 2008 to 2012 time frame because of challenging economic circumstances. The 2012 RIF in general is a neutral, non-discriminatory reason for Finney's termination.

Finney makes several arguments that the RIF criteria and process were pretextual. He argues that the RIF was overly subjective and manipulated by his supervisors to give him the worst ranking. He also contends Halbrook produced an inaccurate 2011 annual performance review that undermined his chances of being retained. We disagree.

First, as to whether Halbrook and Chang deliberately manipulated the RIF process to target Finney, we see no genuine issue of material fact pointing to pretext. Lockheed went through a number of RIFs during the years in question, so Finney cannot claim his supervisors were responsible for manipulating the 2012 RIF evaluation criteria. Nor does Finney provide any evidence he was specifically targeted for termination. The only evidence about why Finney's group was selected for the RIF was because the GPS-III program had so many Grade 4 engineers that losing one would not undercut the program's mission.

Second, Finney has not produced any evidence showing the TDR process was flawed or overly subjective. It relied on a combination of performance scores, seniority, and skills assessments deemed important to the success of the GPS-III program. Finney presents no evidence of bias on the part of the TDR participants who conducted the evaluation and ranked Finney last on a numerical scale applied to every engineer. It is worth noting twelve of the other engineers considered were the same age or older than he was at the time. In fact, six engineers were over the age of fifty-five at the time of the RIF.

Third, although Finney claims Halbrook sent a negative email to TDR participants to influence their evaluations, the email he points to was sent the day *after* the TDR session, so it could not have possibly influenced the decision to terminate Finney.

Next, Finney contends that Halbrook ensured Finney's termination by giving him a negative performance review in 2011 based on inaccurate information. Finney argues Halbrook ignored previous positive performance reviews and erroneously relied on other employees' observations. But even if Finney's claims are correct, so long as Halbrook honestly believed Finney's performance was below average, his review is not evidence of age discrimination. *Pippin*, 440 F.3d at 1196–97. In examining whether a negative review is pretextual, we examine "the facts as they appear to the person making the decision[,] not the plaintiff's subjective evaluation of the situation." *Lobato v.*

-9-

*N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (brackets in original). Even a mistaken understanding can be a legitimate, nondiscriminatory reason for discharge, so long as the decision maker honestly believed in his mistaken understanding. *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007). Finney presents no evidence showing Halbrook gave Finney a bad performance review when he thought Finney deserved a better one. And, in any event, the performance review was only one part of the overall TDR process that ranked Finney worst of all Grade 4 engineers.

Finney also points to an email in March 2012 in which Halbrook expressed a desire to move Finney from the GPS-III project, which Finney claims was a result of age-related complaints. But reviewing the March 2012 email in context, it shows only that Halbrook believed Finney was insubordinate in deliberately failing to comply with Lockheed's requirement that all employees complete a goals assessment statement.

Lastly, Finney contends that Chang violated Lockheed policy by failing to identify another job for Finney within the company. This argument is waived. Finney's argument "was so cursory that the district court did not even address it," so we do not have any "obligation to address it at all." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1173 (10th Cir. 2016). And even if we did address it, nothing in the record supports an inference of

Chang's age-related bias. In fact, Chang hired Finney for the GPS-III project when Finney was already a member of a protected class based on age.

In sum, none of the evidence proffered by Finney evinces age-related animus. Without a showing of pretext or evidence that he was discriminated against based on his age, Finney cannot prevail on a claim of age discrimination. The district court did not err in granting summary judgment on the age discrimination claim.

### B. Retaliation

Finney also contends he was terminated in retaliation for complaints he made, both to Lockheed internally and to the EEOC.

The ADEA prohibits an employer from retaliating against an employee because he "has opposed any practice made unlawful" by the statute, or because he "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. § 623(d). Finney bears the initial burden of establishing a prima facie case of retaliation. To do this, an employee must show: "(1) he or she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action." *Piercy*, 480 F.3d at 1198.

Like discrimination claims, retaliation claims are evaluated under the familiar *McDonnell Douglas* burden-shifting framework. *See id.* at 1198. After a prima facie showing has been made, the burden shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to show that this reason is merely pretext for retaliation. *Id.* The key inquiry at this point is "whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (alterations omitted). The district court found no evidence of retaliatory animus or pretext.

Lockheed does not contest that Finney satisfied the first two elements of his prima facie case. It does contend, however, that Finney has not shown a causal connection between his complaints of age discrimination and his termination. Finney contends that the close proximity between his complaints and his firing establish causation. First, Finney points to a March 2012 email he sent to Halbrook mentioning his EEOC complaints and his views about Lockheed's treatment of older employees. Two days after that email, the TDR that led to Finney's termination occurred.

We have recognized temporal proximity between an employee's protected conduct and an employer's adverse action as sufficient to justify an inference of

causation, but only if "the termination is *very closely* connected in time to the protected activity." *Id.* Given the proximity between Finney's email and the termination, we assume for our purposes that Finney has established a prima facie case.

But Finney must also show Lockheed's articulated non-retaliatory rationale is pretextual. "To raise a fact issue of pretext," our cases explain that the employee must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Id.* at 1172. Finney points primarily to the email that Halbrook sent to Chang stating that Finney should be removed from the GPS-III team "ASAP." But in context, it is clear Halbrook is not referencing Finney's complaints, nor does the email demonstrate any retaliatory motive—it plainly calls out Finney's refusal to comply with Lockheed's self-evaluation program.[1] And, in any event, the email was sent *after* the TDR session, so it cannot be evidence the TDR evaluators retaliated against Finney during that session.

Finney finally contends the fact that he received the worst rating of all employees considered for the RIF in every single category proves there was a concerted effort to target him for termination. But as we explained above, the

---

[1] That email reads: "[Finney] is clearly not interested in improving his performance and helping the GPS program. Rather, he is myopically interested in the rewards that come from solid performance . . . . As such, I will not approve his Commitments unless directed otherwise and would like to remove him from our team ASAP. His conduct is insubordinate and his continued presence on GPSIII is not fair to those that have performed well but are moving off because of the directed headcount reductions." Aplt. Appx. Vol. V at 774.

TDR process was neutral and similarly situated employees both younger and older than Finney were retained by Lockheed. Without evidence otherwise linking his poor ratings to protected conduct, Finney cannot succeed on his retaliation claim.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge