**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONNIE R. ROLLAND,

      Plaintiff - Appellant,

v.

CARNATION BUILDING SERVICES,
INC.,

      Defendant – Appellee.

No. 17-1387
(D.C. No. 1: 16-CV-00057-CMA-STV)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

Ronnie R. Rolland suffers from a variety of maladies including brain damage,

sciatica, memory loss, back and leg pain, anxiety, and depression. On May 14, 2014,

Carnation Building Services, Inc. hired him as a janitor and assigned him to work in the

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.
    This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not encouraged, but not prohibited. Fed. R. App. 32.1. Citation is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id*.

Aurora Public School system (APS), a Carnation client.  At that time, he was a participant in the Social Security Administration's (SSA) Ticket to Work program, which helps disabled individuals obtain employment.  Carnation denies knowledge of his disabilities and there is no indication it knew of his participation in the program.

On July 1, 2014, while working at Gateway High School, an APS school, Rolland engaged in a verbal altercation with his on-site supervisor, Farrozzo Liphford.  Another Carnation employee and an employee of the school witnessed the event; one claimed he heard foul language, the other did not.  That same day, Sharon Morgan, a Carnation manager, issued Rolland and Liphford a written warning about such conduct.  William Sonnemaker, the school's building manager, requested that Carnation remove Rolland and Liphford from their duties at the school.

On July 7, 2014, Morgan terminated both Rolland and Liphford.  She claims that before firing Rolland, she offered him an on-call position at a different school but he refused it and insisted on being fired.  Rolland says he was not offered another position.

He sued Carnation, alleging it terminated him based on his disability in violation of the American with Disabilities Act (ADA), as amended by the ADA Amendment Act of 2008 (ADAAA).[1]  The district judge entered a summary judgment in favor of Carnation.

_____

[1] Rolland also brought claims of age and race discrimination, retaliation, and violations of various constitutional rights.  He later stipulated to the dismissal of those claims.  He also alleged Carnation violated the Colorado Anti-Discrimination Act (CADA).  Because he raised no arguments in support of that claim, the judge entered a summary judgment against him on it.  He offers no challenge to that decision.

Because Rolland relied on circumstantial evidence to support his claim, the judge applied the *McDonnell Douglas* analytical framework.[2] *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017). She concluded Rolland had failed to establish a prima facie case of disability discrimination. *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *see also Dewitt*, 845 F.3d at 1307. And she went further. Even had he done so, Carnation had offered "a legitimate nondiscriminatory reason" for terminating him—the school requested his removal after the altercation—and Rolland had failed to establish "a genuine issue of material fact as to whether [that] reason . . . is pretextual." *See MacKenzie*, 414 F.3d at 1274. She decided his conclusory statement that Carnation had "maliciously" and "unilaterally" terminated him "based on" his disability and his claim that Carnation had no evidence he used foul language during the altercation were insufficient to satisfy his burden. (R. Vol. 2 at 176 (quotation marks omitted).)

Our review is de novo. *Parker Excavating, Inc. v. Lafarge West, Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc.*, 863 F.3d at 1220 (quotation marks omitted). Because Rolland appears pro se, we have liberally construed

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

his pro se filings, stopping short, however, of serving as his advocate.[3] *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

We need not weigh in on whether Rolland has established a prima facie case of disability discrimination. We assume he did so, but the assumption does not help him. He has failed to establish a genuine issue of material fact as to whether Carnation's stated reason for his termination was pretextual.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Dewitt*, 845 F.3d at 1307 (quotation marks omitted). "A plaintiff may also show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation marks omitted).

Irrespective of which theory a plaintiff relies on, "[w]e may not second guess the business judgment of the employer." *Dewitt*, 845 F.3d at 1307 (quotation marks omitted). We need not "ask whether the employer's decision was wise, fair or correct" but rather "whether it honestly believed the legitimate, nondiscriminatory reasons it gave

---

[3] Rolland eventually retained counsel in the district court; counsel responded to Carnation's summary judgment motion. He is pro se on appeal.

for its conduct and acted in good faith on those beliefs." *Id*. (quotation marks omitted). After all, "our role is to prevent intentional discriminatory practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Id*. at 1308 (quotation marks omitted).

Rolland says he presented sufficient evidence to raise a question of fact as to whether Carnation's reason for terminating him was pretextual. He claims Morgan knew he was disabled and the reason Carnation offered for his termination is unworthy of belief because (1) there is a question of fact as to whether he used foul language during the altercation and whether he refused to be transferred to another school in lieu of termination and (2) it is inconsistent with the reason Carnation provided to the Colorado Civil Rights Division (CCRD) in response to his charge of discrimination.

It is extremely doubtful whether Morgan knew Rolland was disabled. He points to a letter Carnation received from the SSA in May 2014. However, the letter merely requests wage information to allow it to "determine [Rolland's] eligibility for Social Security benefits." (R. Vol. 2 at 93.) It does not indicate why he is a benefits recipient. Moreover, while Morgan admits Rolland told her he was receiving social security benefits, she explained she believed he was receiving those benefits because he had retired early, not because he was disabled. Rolland does not claim to have told her the reason he was entitled to benefits. Finally, Rolland claims Morgan accommodated his disabilities by allowing him to take extra and longer breaks and knew he had sciatica because he requested not to use ladders. Morgan, on the other hand, says he never

requested extra or longer breaks and, while she admits Rolland asked not to go on ladders, she did not know the basis for that request. Nevertheless, even if Morgan knew Rolland was disabled, he has not demonstrated her reason for terminating him was pretextual, *i.e.*, "not the true reason for the employment decision." *DePaula*, 859 F.3d at 970.

Although not entirely clear, he apparently thinks his claimed restraint from using foul language during the altercation served to insulate the altercation itself from forming the basis for his termination (or, at the very least, presents a question of fact on the issue). But the use of foul language did not prompt the school to request his removal, it was the altercation itself. According to Sonnemaker's affidavit:

> [Rolland] was asked to be removed from Gateway High School *for his altercation with his on site Lead*. During summer cleaning he and another Carnation . . . employee got into an altercation. The use of language and intensity cannot be tolerated in a school setting. It was in the best interest of Gateway and my staff to ask for him to be removed from the site as well as the other employee that was in the altercation.

(R. Vol. 2 at 83 (emphasis added).) Rolland offers nothing to rebut Sonnemaker's affidavit or to create a genuine issue of material fact as to the school's reason for requesting his removal.[4] Indeed, he does not dispute that the altercation involved he and Liphford "yelling" at each other. (Appellant's Op. Br. at 15.) Moreover, it is "immaterial" whether Morgan's belief that the altercation involved foul language was

---

[4] The school's motive for requesting his removal matters not a whit. However, it speaks volumes as to whether Carnation's reason for his termination was pretext for disability discrimination. Maintaining good client relations is the centerpiece of most business plans.

"actually correct"; "what matters is that [Morgan] honestly held that belief and acted on it in good faith." *See Dewitt*, 845 F.3d at 1309-10; *see also Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) ("Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision."); *Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 947 (10th Cir. 2016) (unpublished) ("Even a mistaken understanding can be a legitimate, nondiscriminatory reason for discharge, so long as the decision maker honestly believed in his mistaken understanding.").

Rolland also accuses Carnation of falsely claiming to have offered him another job in lieu of termination. But that, too, is "irrelevant"; "the ADAAA does not require that employers choose the most lenient course of discipline, or in this case, no discipline at all." *Dewitt*, 845 F.3d at 1314 ("That [the employer] had the option to impose a less severe disciplinary measure is irrelevant [to the pretext inquiry]. What matters is whether [the employer's] intent in imposing the Last Chance Agreement was discriminatory . . . ."). This is especially true in the absence of any Carnation policy requiring Morgan to offer or even consider placing employees in another position before terminating them. *See Eke v. CaridianBCY, Inc.*, 490 F. App'x 156, 166 n.8 (10th Cir. 2012) (unpublished) (rejecting plaintiff's argument that employer's failure to find her another position in company in lieu of laying her off demonstrates pretext; there was no evidence that the employer's "[reduction in force] selection process directed the decision makers to find alternate positions for employees whose jobs were . . . eliminat[ed]" and plaintiff cited "no authority supporting her proposition that an employer's failure to consider placing an

employee in another job before terminating her employment is evidence of pretext").  As an at-will employee, Rolland could be fired at any time for any reason, albeit not a discriminatory one.  *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987).

Finally, Rolland claims Carnation offered inconsistent reasons for his termination. The termination notice, dated July 7, 2014, and completed by Morgan, stated: "Customer has asked for removal of employee."  (R. Vol. 2 at 110.)  In her affidavit submitted in response to Rolland's complaint to the CCRD, Morgan said the school requested his removal and it was the altercation with Liphford and its intensity that led to his termination.  In Carnation's statement to the CCRD, it claimed Morgan terminated Rolland as a result of his "absenteeism, aberrant behavior, argumentativeness, defiance, disruptive conduct, interference with company operations and irregular presentation ['brushing his teeth with Ben-Gay'] caused a distraction to the workplace order."  (R. Vol. 2 at 108.)

Although "a jury can reasonably infer pretext when an employer is inconsistent in the reasons it provides for the termination," *see Fassbender v. Correct Care Solutions, LLC*, --- F. 3d---, No. 17-3054, 2018 WL 2208473, at *8 (10th Cir. May 15, 2018) (quotation marks omitted), merely providing additional non-discriminatory reasons for the termination is not enough to establish pretext, especially where the additional reasons are not contradictory.  *See Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("[T]he existence of a possible additional non-discriminatory basis for [an

employee's] termination does not . . . prove pretext."); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 579 (7th Cir. 2003) ("an additional, not necessarily inconsistent reason for [an] employment decision" does not give rise to an inference of pretext); *Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 F. App'x 425 (5th Cir. 2016) (unpublished) ("reasons for termination that are merely additional, and not contradictory, do not necessarily suggest pretext") (quotations marks omitted).  A majority of the reasons provided by Carnation to the CCRD—argumentativeness, defiance, disruptive conduct, and interference with company operations—are entirely consistent with the reason Morgan provided for terminating Rolland.  The remaining reasons are additional reasons, not inconsistent with the stated reason.

**AFFIRMED**.  We **GRANT** Rolland's "Motion For Relief Pursuant to Rule 27 of the FRAP," which we construe as a motion to supplement the record and his opening brief.[5]

Rolland has filed a motion to proceed without prepayment of fees (*in forma pauperis* or *ifp*).  That motion was unnecessary because he was granted *ifp* status in the district court, which continues on appeal under Fed. R. App. P. 24(a)(3).  Therefore, the motion is **DENIED AS MOOT**.  Nevertheless, only prepayment of fees is excused, not the fees themselves.  *See* 28 U.S.C. § 1915(a) (allowing courts to authorize the

---

[5] In his reply brief, Rolland faults Carnation for not responding to this motion as ordered.  But we did not order Carnation to do so; we instead gave it the option to respond.

- 9 -

commencement of a civil or criminal suit or appeal "without *prepayment* of fees or security therefor") (emphasis added). All filing and docketing fees ($505.00) remain due and payable to the Clerk of the District Court.

Entered by the Court:


**Terrence L. O'Brien**
United States Circuit Judge